Miles Cale, on behalf of the Appellant, Western Utility Contractors Council, if I could begin in discussing the issues relating to the jurisdiction of this appeal and the procedure this case had before the Industrial Commission. The matter was tried before the arbitrator concerning the events of June 12, 2006. Mr. Dragovan suffered a sudden cardiac event, an arrhythmia change in his heartbeat, that muscle and electrical impulses in his heart that caused sudden cardiac death. The case was tried before the arbitrator who awarded benefits. It was heard by the burden of proof. The matter was subject to an appeal by Mrs. Dragovan to the Circuit Court of Cook County. Judge Taylor, on hearing the, reading the evidence and reviewing the evidence, issued a decision in which he found that the decedent's widow had met her burden of proof and he remanded the case. The judge specifically substituted his opinion for that of Mr. Dragovan. In addition to the review of additional evidence, or any question of comment, the only charge the judge gave to the Industrial Commission was to calculate and to enter an award pursuant to Section 7. So does that deprive us of jurisdiction? That does not deprive you of jurisdiction. I believe that under the A.O. Smith case, that gives you jurisdiction because it's just a matter of mere mathematical certainty. There was no other issue, additional evidence, or any new finding the Industrial Commission to make. All the Industrial Commission was charged with was adding up the math under Section 7 of the Act and awarding the $8,000 in death benefits. There was no dispute about average weekly wage or anything like that? Absolutely no dispute whatsoever. The only dispute was causal connection, really? Absolutely. And whether the decedent's widow met her burden of proof. So the only thing the Industrial Commission is charged with is entering a Section 7 award. So I do believe this Court does have jurisdiction. This was not a remand for any additional evidence and there's no risk of this Court having to have re-reviewed this case. This will be determined based upon whether the Circuit Court's reversal of the Industrial Commission was against the manifest way of the evidence. Which brings us to the crux of the matter. Under the cases, Cognato and other cases, this Court and the courts have held that in situations such as this, in a cardiac situation, this is a case that necessarily turns on expert opinion. There were two experts in this case for the Industrial Commission to rely on. Both experts were provided factual scenarios and the Industrial Commission made a specific finding that the opinions of Dr. Carroll, a board certified cardiologist, was more credible than that of Dr. Cervaneva. The Industrial Commission specifically found that the widow did not meet her burden of proof in this case. And the Industrial Commission rightfully found that decision because what Dr. Cervaneva and the widow presented as the facts of the case was that this decedent was working, digging in a ditch from the hour of 7 o'clock in the morning until 11 o'clock in 85 degree heat and that after a 15 minute break he went back into the act of digging and then suffered the cardiac event. Those facts, the Industrial Commission had specifically found and had relied on the atmospheric testing and the information that had been introduced at the time of evidence that the temperature was not 85 degrees as relied upon by Dr. Cervaneva and the opinions of Dr. Carroll specifically relied upon the factual testimony and the factual foundation of the evidence that this man's workday had been broken up between two different work sites and the extent of his work activities was varied during the course of the day with only 15 minutes of digging at the first site and the rest of his work activities involving spotting the backhoe which removed the dirt from the earth and also cleaning up around the interducts. Judge Taylor had evaluated this information and believes that in his mind the Industrial Commission, it was clear error and the Industrial Commission could reach no other conclusion that this was strenuous physical labor. The Industrial Commission did review all of these facts. He was digging with a shovel for at least 10 or 15 minutes before his cardiac event, right? 10 to 15 minutes. By everybody's calculation. 10 to 15 minutes in the morning and he had cooled down. Immediately before. Immediately before, it was approximately 12 minutes according to the different testimony and he was clearing the interducts. Judge Taylor believes that clearing the interducts and digging with the shovel has to be strenuous. That's what Judge Taylor found in his opinion. What we had Mr. Coase testify to and what the Industrial Commission could reasonably infer, we asked Mr. Coase about after the backhoe has removed the bulk of the dirt, if you stand on the outside, the dirt cascades down and collapses. You can also stand inside and just touch it with a shovel and it gives way. The judge has inferred. You just touch it with a shovel. That's what Mr. Coase testified to, that after the trench has been dug. It must be a magic shovel. Well, after there's a risk of trench collapse, as Mr. Coase testified to, that there wasn't strenuous. The Industrial Commission could reasonably infer that this wasn't strenuous physical activity. That also could be inferred by the fact that after the first episode of digging in the morning, the man had cooled down. He had no ill effects. Nothing was noticed. There was no notation of ill effects at the time. This man had an advanced disease process and a pinhole size opening in his left descending artery. It was up to the medical experts to tell us as to whether this was a spontaneous event or whether this was the result of his physical activities. Dr. Carroll, although he was questioned about whether a sustained rise in your blood pressure could cause a change, indicated there was no indication of a sustained rise in blood pressure because the man's condition had cooled down and there was no signs of ill effects. Unlike the holding and twice over clean relied upon by the decedent's counsel, the widow's counsel in this case, there was no indication that this man was suffering ill effects of engaging in the work activity. All the doctors agreed that a spontaneous event, this was not a heart attack, this was not ruptured plaque, this was a change in the electronic impulses inside the man's heart that could occur while he was at rest, while he was engaging in any activity. Well, did Carroll vacillate, though, a little bit? I think the argument is going to be that his opinion that only strenuous physical activity could have triggered the employee's cardiac arrhythmia was then somewhat contradicted in his August 26, 2007 report. He would be of the opinion that any physical activity could have resulted in the arrhythmia. Then at one point he said, so if no activity is necessary to precipitate an event, a little bit of activity would be. So can the argument be that he was somewhat inconsistent and conflicting in his statements? If you ask someone to presume that it was, in fact, induced by traumatic, then that was what Dr. Carroll was specifically asked, to presume that it was traumatic or presume that it was caused by that. Dr. Carroll did write a report at the start of the case. But before the testimony was taken and before the evidence was introduced, the Industrial Commission can review these evidence. The conflicts in Dr. Carroll's testimony and the Petition Department Okay, just a minute. Are you talking about in Dr. Carroll's report he was asked to presume that? Not in his report. In the questions of counsel he was asked to presume that it had been traumatically induced. Dr. Carroll did write a report. When he was questioned regarding the specifics in this instance in the man's physical activities, there might be, they will claim there are some inconsistencies. Those inconsistencies are nothing compared to a presumption the man was subject to, which is something that was specifically relied upon by Dr. Serdanova, something the Industrial Commission does not find exists in the case. There is no presumption. The legislature did amend the statute to allow presumptions. Dr. Segovia, I think it's Segovia, right? What she said in her opinion was, she was asked a hypothetical. But didn't she then say, if you're asking me if it's heavy physical labor and it's traumatic, then it's traumatic. If it's hot, would that cause it? The answer is yes. That was. And presumably she relied on the fact in that hypothetical that the man had been in the trench for four solid hours in 85 degree heat. So Dr. Serdanova relied on that. The legislature did amend the Workers' Compensation Act to allow a presumption for firefighters and paramedics in cardiac cases. They did not provide any such presumption for other workers, trench workers, utility workers, laborers. The petitioner, a decedent state, has the obligation to present evidence and present evidence that is going to be reasonably proved up at the time of trial. In this case, the evidence in Reliance on Dr. Serdanova was that he was digging, he was in the trench intermittently for four solid hours and had left the trench for a 15-minute break. The Industrial Commission could reasonably rely upon that, just as they could reasonably rely on a cognato case in which the individual had already been suffering from myocardial infarct and the man had been unloading 150-pound loads of meat during the course of the day. The petitioner bears the burden of proof, and in this case, the Industrial Commission relied on specific factors, including the fact that there was no sign of an outward appearance of difficulty in his activity. There's no sign of his hyperventilating. He had cooled down appropriately at the lunch hour. He was joking and talking. There was nothing, as in twice over clean, to indicate this man was suffering from the effects of physical exertion. Well, let me ask you this. Didn't Segovia also, wasn't his opinion based on the underlying factual assumption that it was very hot outside? Dr. Carroll was given the correct facts. I mean, Segovia. Didn't Segovia? Segovia is a she. She indicated that she did presume it was 85 degrees. She was specifically given that fact, which is something the Industrial Commission did not find, and the Industrial Commission specifically relied upon the fact that the temperature had only been 53 degrees to 68 degrees that day. So I suppose it could be argued to the contrary, that Segovia's, her opinion, suffered from the same arguable difficulty that Carroll did. I mean, in other words, she gave an opinion that was apparently based on a set of facts that were not accurate. And Dr. Carroll had never been given the fact scenario that it was 85 degrees. Dr. Carroll was given the correct facts. Dr. Carroll's testimony in the Industrial Commission found that it had most closely tracked the testimony Mr. Coase, the only eyewitness during the course of the day, regarding the activities, how the activities were broken up, and there was no obvious signs of distress or anything else when the man was engaging in these physical activities. The petitioner does bear the burden of proof. The Industrial Commission found that she did not meet the burden of proof. The Industrial Commission did not rely on any improper finding, saying that the man's condition was a straw that broke the camel's back or there was any normal activity of daily living could have caused that. The Industrial Commission evaluated the opinions of the various experts, found the opinions of Dr. Serganova specifically lacking in the fact they relied on improper evidence, evidence that wasn't introduced in the time of arbitration, that wasn't factually based. The Industrial Commission rejected that. And in a situation where all the doctors agreed that the man's condition could merely be spontaneous based on the changes in electrical impulses in his heart, that the Industrial Commission found that there was not proof that these work activities were the causal connection that caused the eventual changes in the impulse. Dr. Carroll in his deposition did testify that if work activities and stress were the result of changes in the electrical impulses in the heart, that they wouldn't bother implanting the defibrillators and the implants such as Vice President Cheney testified in the deposition, they would just advise people not to engage in activities. What occurred with this petitioner is something that could have occurred at any time. And there is no indication of a link between these work activities and that sudden cardiac event that occurred in June of 2006. Thank you. Counsel, please. Good afternoon. May it please the Court, my name is Elizabeth Dow, Counsel. In your May 11, 2011 order, you requested that the parties be ready to speak about jurisdiction. Perhaps in the only point that counsels will agree upon today, I too believe that this Court has jurisdiction and that Judge Taylor's opinion was a final appealable order. I'm more than happy to discuss the application of A.O. Smith Corp. and St. Elizabeth Hospital if anybody would like to hear that. I'd like to see us reach the merits, you're saying. It's an interesting case in that what we really have here is a battle of the experts. Does that help you? I think it does, because I think that Judge Taylor has written a very well-reasoned, well-thought-out opinion in which he has said that, in fact, the decision of the Industrial Commission is against the manifest weight of the evidence. And why? So do you have to disbelieve Dr. Carroll? Yes, because they have improperly relied on Dr. Carroll's testimony. And what we have here is a couple of issues with regard to Dr. Carroll's testimony and opinions that are against the manifest weight of the evidence of the facts that occurred on the day of Mr. Dragobin's death. And those facts were brought by the only eyewitness in this case, Mr. Coase, who's Mr. Dragobin's foreman and the defendant's employee. First, with regard to the issues on Dr. Carroll's opinions and testimony, number one, his initial, you know, out-of-the-box statement is that any activity could cause Mr. Dragobin's death with the condition that Dr. Sargovia, excuse me if I mispronounced that name, who is unpaid, just the medical examiner who both experts do agree that this is a cardiac arrhythmia case. So to begin with, Dr. Carroll says in his review of the records that any physical activity could cause this arrhythmia to cause a cardiac event. Second thing is that then during his testimony, he provides inconsistent testimony. First, he says that the facts that he was given, quote, from my understanding and the information provided to me, the activity that Mr. Dragobin was performing was not strenuous physical activity. He then, further in that testimony on his deposition, proceeds to say that he generally agrees that several minutes of physical activity could trigger this arrhythmia. And that's physically ñ And that's one of the things that the trial judge hints his opinion on or his decision on is that Carroll ostensibly contradicted himself. Correct. But that's why I asked the question of your opposing counsel. I have to ask you. Dr. Segovia, given her opinion, says I'm going to assume it was a hot day, which is clearly you'd have to acknowledge not the case here. Correct. However, that testimony is based upon Mr. Coase's testimony, which was the question of his recollection as to what the temperature was. And he recalled in his testimony that it was between 80 and 85 degrees. And it turned out it was definitively determined to be between 50 and 60. Correct. And why did he think it was between 80 and 85 degrees? Because all three laborers, Mr. Coase, Mr. Nagel, who was the other laborer on the job, and Mr. Dragobin had all been sweating all day. But the point is simply this. If you're alleging that Carroll's opinion was based upon a flawed factual assumption, isn't it arguably true that Segovia's opinion suffers from the same flaw? She used a major factor in arriving at the decision. He was exerting himself on a hot day, and that's flat-out wrong. That is correct. However, she does have the opinion, which is that the activity, which is the digging so I would argue that we have two factors going on here. One is the temperature, and the second is the strenuous nature of the digging. And the testimony on Mr. Coase is that they come, they bring this backhoe in. This trench that is supposed to be built for these transformers, there are two of them. They work on one in the morning. They lift these 150-pound transformers onto the truck, then back off the truck twice. So for each transformer, dig the trench for the first transformer, then they go to the second site. The backhoe, the trenches are 6 1⁄2 to 7 feet by 4 feet wide and 3 feet deep. The testimony is that the backhoe goes to the depth within 18 inches. And this evidence is before the commission? It was before the commission. How do you respond to the argument that it's up when you have conflicting medical opinions, which clearly you do. We have conflicting medical evidence in this case. Isn't it normally within the province of the commission to weigh the conflicting medical evidence and weigh the credibility of the witnesses? It is, Your Honor. However, the hypo given to Dr. Carroll, which is what the commission bases its finding on. Was flawed. Was flawed. And so it's against the manifest way to the evidence. The hypothetical in Segovia was flawed. Yes, but only really with regard to the temperature. Isn't that critical? She said assuming it was a hot day, she thought it was a major factor. Assuming it was a hot day based upon Mr. Coase, who's the only eyewitness. But that doesn't matter based on Coase. If the information is flawed, it doesn't matter where it comes from. It's either right or wrong, correct? You can't say it's okay that she gives an opinion. Think about what you're saying on flawed evidence because it came from another witness. Correct. However, on the key piece of. . . Her opinion was based on facts and evidence. Correct. Because Coase, the only non-medical witness, testified to the temperature. That is correct. So he's the only eyewitness there that we have alive. Just to make a little finer point on it, we're talking about 53 to 68. That's during the 24-hour period of that day. But this happened about noon or 1 o'clock. Correct. It was right after the lunch break. So we're talking about closer to the 68, aren't we, at that time? I mean, it wasn't in the 50s when he had his cardiac event. Correct. And again, Your Honor, the testimony and the only testimony we have is Mr. Coase with regard to the temperature. And he says directly he believes that it was between 80 and 85 degrees. So it was his memory of what it felt like working that day. Correct. Because all three of the laborers had sweated during their physical activity. That included digging 18 inches in a trench that's 7 feet by 4 feet. You couldn't convince Commissioner Rankin-Sherman. Excuse me? You could not convince Commissioner Rankin-Sherman to go the other way. Correct. But that was based upon their incorrect reading of the evidence given to Dr. Carroll in his, you know, we have this sort of essentially the battle of the experts. And Dr. Carroll's hypo is incorrect, that there was no activity, strenuous activity going on at the moment of the cardiac arrest. And that he does admit, Dr. Carroll states, that any activity, and clearly his testimony is that strenuous activity could cause this cardiac event. Did you try this case before the operator? I did not. I'm curious, what was the argument before the commission? Was it that, I mean, there's some evidence that the deceased had some other medical issues. I mean, and that he was a smoker, had 60 beers a week. Is that correct? Am I reading that right? Your Honor, that was, I believe, evidence that Western Utility tried to get in. It was not evidence that was brought in by the experts. Was your argument below, do you know, that the work was a contributing factor in causing the arrhythmia? Or that it was simply because of the work that he died? What theory did you argue in the lower courts? Below, under both CISPRO and Twice Over Clean, the standard is whether the work was a cause of the accident. And clearly, the strenuous work in the trench, digging, you know, the 18 inches in this huge trench, after a day of lifting the 150-pound transformers on and off, this being the second trench, was a cause of his death. How long did Mr. Coase say he saw him digging? Excuse me? Mr. Coase testified that he saw him digging for a period of time before he turned his back and walked away to get tape measure or something. Mr. Coase has two sort of general time frames. The first is that he said that he saw him digging for five minutes, and that he then went back to the truck with the plans and the tape measure and was gone for another five minutes, so someplace around ten, ten minutes. When he came back, the scene was already out of the trench and was in difficulty. Was he not? Correct. We don't know when he got out of the trench in that five-minute period. We do not. And Mr. Coase later testified that he thought that the digging had occurred anywhere between 12 to 20 minutes. So we have a period of anything from a 10 to 20-minute digging by himself in the first trench. The other laborer, Mr. Nagel, had also participated in the digging. Mr. Nagel had gone off to dump some dirt at this point. So the strenuous nature of the digging clearly was a cause. And, you know, it's clear that in his testimony that Dr. Carroll admits that physical activity can cause this arrhythmia and that strenuous physical activity can further cause this arrhythmia. With Mr. ---- My difficulty with this case is that the commission decided this on a failure proof. It didn't decide it on proof. It indicated in its opinion that it concludes that the Petitioner has failed to meet her burden in proving that the decedent's death was causally related to his work activities. This is a failure proof case. This isn't a situation where they say, we're going to believe this guy over that guy. The commission punched some holes in Segovia's opinions based upon the facts that she testified to. 15 to 20 minutes in 85-degree heat, and they found that it was 50 to 68-degree heat. And made a specific finding of that fact. 50s or 60s, hovered in the 50s or 60s, does not reflect that the decedent was digging in a trench with a shovel. But at any rate, this is a little bit different than suggesting that the manifest weight goes with Carroll's opinion. This is a case where they turn around and say you just didn't have the horses. You've got some other explanations as to why this man could have died. And we don't think that you gave us enough evidence to meet your burden of establishing that it was causally related. Actually, Your Honor, I would respectfully disagree that I actually think that the commission hangs its hat on Dr. Carroll's testimony and says, based upon that testimony, we don't think it was a cause. And that, you know, maybe we're splitting hairs at this point. But it is. I'm reading for you. The commission concludes that the petitioner failed to meet her burden in proving that the decedent's death was causally related to work activities. Arbitrary decision is hereby reversed. Compensation is denied. It's a failure to prove case. So my question is, why couldn't they criticize the opinion of Dr. Segovia and really based on the criticism of Dr. Segovia's opinion alone deny compensation? Because I think that to get there, that although the commission says it was a failure to prove, they based that decision upon their discounting of Dr. Segovia, but also their counting of, you know, hanging their hat on Dr. Carroll's opinion. And Dr. Carroll's opinion is against the manifest weight of the evidence in that he was given a hypo and given information in his testimony, Dr. Carroll's testimony, that there was not strenuous activity occurring prior to the point of Mr. Dragolin's cardiac event, that Mr. Dragolin being in the trench and sweating all day, even when it's 60 degrees outside, was not strenuous. Thank you. Mr. Bonnell. Just very briefly, I was the attorney who tried the case, and my office did prosecute the appeal. The industrial commission did specifically question as to how they could rely on this case, rely on the opinion of Dr. Serganova, which essentially relied on the fact that men had been digging for four solid hours and an 85-degree heat. Let's talk about this heat. Is it the ambient temperature? Is that what you're talking about? Dr. Serganova. Excuse me. I'm not done. Is there any evidence of heat index? No. Relative humidity. In terms of the discussion with the doctors, the doctor was talking about the man's blood becoming viscous and sweating and the stressors on the body. That was what Dr. Serganova was cross-examined during the deposition, and that was the reliance. They were talking about other factors, the mere fact of throwing up, coughing, any number of things. When you're down to a pinpoint size opening and you're left descending artery, many things, the activity just changes in the impulses because there's so much fat around the cardiac wall that the electronic impulses will not travel to the heart. So the heat was more than just a matter of that. The doctor was questioned and did apparently rely on the fact that the man's blood would become viscous and it would change the electrolytes in his body on cross-examination in her deposition. So the commission did find that as a failure approved, they did discount the testimony of this doctor because the doctor apparently presumed that the man had been engaging in ditch digging for four hours. Thank you. Thank you, counsel. Of course, we'll take the matter under writing for disposition.